

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMAKUA DEVELOPMENT LLC,<br>a Nevada Limited Liability Company, | ) )<br>) | Case No. 05 C 3082 |
| Plaintiff, | ) )<br>) | Judge Mark Filip |
| vs. | ) )<br>) | |
| H. TY WARNER, an individual; TY INC.,<br>a Delaware Corporation; TY WARNER HOTELS<br>& RESORTS LLC, a Delaware Limited Liability<br>Company; and JTL CAPITAL LLC, a Texas<br>Limited Liability Company, | ) )<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Amakua Development LLC ("Amakua" or "Amakua LLC" or "Plaintiff"), filed suit against Defendants, H. Ty Warner ("Mr. Warner"), Ty Inc. ("Ty Inc."), Ty Warner Hotels & Resorts LLC ("Warner Hotels" or "Warner Hotels LLC," together with Mr. Warner and Ty Inc., the "Warner Defendants"), and JTL Capital LLC ("JTL" or "JTL LLC") regarding the sale of real estate located in Los Cabos, Mexico (the "Las Ventanas Property") in the District Court for the Central District of California (the "California Court"). (D.E. 1.)[1] By order entered May 11, 2005, the California Court transferred the suit to this Court pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. 1406(a) on the grounds that it lacked personal jurisdiction over Mr. Warner, venue was improper in the Central District of California, an Illinois court would have personal jurisdiction over all Defendants, and venue would be appropriate in this Court. (D.E. 38 (attached as Exhibit A to D.E. 53).)

---

[1] The various docket entries in this case are designated "D.E. __."

Plaintiff's operative complaint ("Complaint") alleges the following state law claims against the Warner Defendants: breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), fraud (Count III), and quantum meruit (Count IV). (D.E. 64.) The Complaint also alleges a state law claim for intentional interference with contract against JTL (Count V). (*Id.*) The Warner Defendants moved to dismiss Counts II and III. (D.E. 51.) For the reasons stated below, the Court grants the Warner Defendants' motion to dismiss Count II without prejudice and denies its motion to dismiss Count III.

## I.    Relevant Facts[2]

Amakua, a Nevada limited liability company with its principal place of business located in Las Vegas, Nevada, was formed for the purpose of consulting, identifying, developing, and transacting hotel properties. (D.E. 64 ¶¶ 2, 11.) Ty Inc. is a Delaware corporation with its principal place of business in Westmont, Illinois. (*Id.* ¶ 3.) Warner Hotels is a Delaware limited liability company with its principal place of business in Santa Barbara, California. (*Id.* ¶ 4.) Mr. Warner maintains residences in Santa Barbara, California and Westmont, Illinois. (*Id.* ¶ 5.) Plaintiff alleges, on information and belief, that Mr. Warner is the president and chairman of Ty Inc. and the sole owner and managing member of Warner Hotels. (*Id.*) Defendant JTL is a Texas limited liability company with its principal place of business in Dallas, Texas. (*Id.* ¶ 9.)

On August 5, 2003, Amakua became aware that negotiations had terminated between JTL and Omni Hotels concerning the possible acquisition by Omni Hotels of parts of the Las Ventanas Property. (*Id.* ¶ 16.) Through confidential discussions with JTL, Amakua learned that

---

[2] The following facts are taken from the Complaint. The Court accepts the allegations as true, as precedent instructs, for present purposes. The Court takes no position on whether any of the allegations are actually well-founded.

2

JTL was a party to a stock purchase agreement in which JTL would acquire ownership of the Las Ventanas Property for approximately $68.7 million. (*Id.*) Pursuant to this agreement, JTL was required to put down a $100,000 non-refundable deposit on or about October 2, 2003, and to complete the purchase before December 31, 2003, which would require the funding of the purchase price. (*Id.* ¶¶ 16, 23.) JTL was anxious to find a buyer to replace Omni Hotels before the October 2, 2003 deposit deadline. (*Id.* ¶ 16.) Through these discussions, Amakua also learned that it could acquire the hotel, the surrounding condominium project, and the additional development land on the Las Ventanas Property for $70.25 million, with JTL keeping two condominiums on the property. (*Id.* ¶ 18.) With the permission of JTL, Amakua analyzed detailed financial information regarding the Las Ventanas Property, which was prepared by the property manager, Rosewood Hotels & Resorts. (*Id.* ¶ 17.)

On or about September 18, 2003, representatives of Amakua spoke with John J. Hong ("Mr. Hong") regarding the Las Ventanas Property. (*Id.* ¶ 19.) Plaintiff alleges, on information and belief, that Mr. Hong was employed by Ty Inc. as its Executive Vice President, and further alleges, on information and belief, that Mr. Hong was appointed by Mr. Warner to act as the Personal Advisor/Business Affairs to the Warner Defendants in connection with the acquisition of hotel properties. (*Id.* ¶ 12.) During the conversation, Mr. Hong told Amakua that his principal knew the hotel well and would be very interested in it, and that he wanted information about the possible transaction right away. (*Id.* ¶ 19.) Hong concluded the conversation by stating that, "We can buy this deal." (*Id.*) Concerned that it would be excluded from the transaction after it brought together Mr. Hong's principal and JTL, Amakua sent Mr. Hong a Confidential Non-Disclosure and Non-Circumvention Agreement (the "Agreement") on September 19, 2003. (*Id.* ¶

3

20.) The Agreement provides that, for a period of two years, the information disclosed by Amakua would be kept confidential and that Mr. Hong "agrees to refrain from circumventing Amakua in any dealings either directly or indirectly." (*Id.*, Ex. A ¶¶ 2, 10.) The Agreement further states that it is "binding upon any and all directors, officers, employees, contractors and agents of each party as well as parent, subsidiary, related and affiliated companies." (*Id.*, Ex. A ¶ 12.) The Agreement also has a choice of law provision (the "Choice of Law Clause") that states that, "[t]his Agreement will be governed and construed in accordance with the laws of the State of California." (*Id.*, Ex. A ¶ 11.) Mr. Hong signed the Agreement as the "Principal Advisor/Business Affairs," but left blank the identity of his principal. (*Id.*, Ex. A at 4.) He faxed the signed Agreement to Amakua's representatives in Newport Beach, California on September 22, 2003. (*Id.*)

On September 24, 2003, Amakua confirmed that Mr. Hong received the confidential information regarding the Las Ventanas Property, including a financial analysis of the transaction. (*Id.* ¶ 21-22.) Mr. Hong then orally told Amakua that Mr. Warner was Mr. Hong's principal (Amakua notes an apparent conflict on this point in its Complaint, because "[i]n response to written interrogatories, Hong has taken the position and verified under penalty of perjury that he executed the Agreement on behalf of Warner Hotels" (*id.* ¶ 22 n. A.)), that Mr. Warner was impressed with the numbers, and that "[t]his deal makes sense for us because we have a West Coast presence with hotels." (*Id.* ¶ 22.) During the conversations that followed, Mr. Hong told Amakua that: Mr. Warner would be interested in the hotel property, but not the condominium development part of the Las Ventanas Property; Mr. Hong agreed that $76 million was a fair price; and Mr. Warner would buy the hotel for that amount. (*Id.* ¶ 22.)

Amakua arranged for Messrs. Hong and Warner to meet David A. Lane ("Mr. Lane") of JTL at the Las Ventanas Property in Los Cabos, Mexico on October 1, 2003, the day before JTL was obligated to tender the $100,000 deposit. (*Id.* ¶ 23.) During the visit to the property, JTL and Mr. Warner apparently discussed a transaction between JTL and a Warner affiliate which would circumvent Amakua completely, and Mr. Warner left thinking he had a "deal" to purchase the Las Ventanas Property from JTL. (*Id.*)[3]

Following the October 1, 2003 meeting at the Las Ventanas Property, Mr. Hong called Mike Scofield, the managing member of Amakua (*id.* at 19), and stated that "the deal was not going to occur," that Mr. Lane was "hokey," and that Mr. Hong did not have any faith in the deal. (*Id.* ¶ 24.) (At this time, the Warner Defendants actually were bringing in lawyers and brokers to pursue and consummate the transaction (*id.* ¶ 42); the letter of intent thereafter executed between Warner Hotels and JTL also contains terms nearly identical to the terms negotiated by Amakua before it was allegedly circumvented, including the pricing and holdback of condominiums for JTL (*id.* ¶ 43).) On the telephone call, Mr. Hong further said that, even if Mr. Warner decided to buy the Las Ventanas Property, Mr. Warner would do it through his "hotel group" and that the non-circumvention Agreement "would not hold up." (*Id.* ¶ 24.) Mr. Scofield told Mr. Hong that the Agreement would be in force until the end of its two-year term. (*Id.*)

---

[3] Amakua alleges that the documentary evidence leaves "little doubt" about Mr. Warner's state of mind in the first week of October 2003. (D.E. 64 ¶ 23.) Specifically, Amakua alleges that one handwritten note addressed to Mr. Warner from his broker identifies the terms of the offer in Mexico" and compares it to the terms of the "offer after Mexico" (emphasis in Complaint), and another document produced by Warner Hotels identifies the terms of the "deal you thought you had when you first left the property." (*Id.*)

Without Amakua's knowledge, JTL and the Warner Defendants negotiated a letter of intent pursuant to which Warner Hotels would acquire the Las Ventanas Property. (*Id.* ¶ 26.) In connection with the deal, JTL received from Warner Hotels the promise of indemnification for any claim made by Mike Scofield. (*Id.*) In one written communication, JTL's agent wrote, "We also discussed [sic] you had to indemnify JTL against any brokers especially the ones John Hong tried to get into the deal." (*Id.*) On December 30, 2003, JTL issued a press release announcing its purchase, in partnership with Farallon Capital Management LLC, of the Las Ventanas Property. (*Id.* ¶ 27.) On September 24, 2004, Warner Hotels issued a press release announcing its purchase of the Las Ventanas Property from JTL. (*Id.* ¶ 29.) Amakua was not involved in the transaction. (*Id.*)

## II.  Propriety of Diversity Jurisdiction

On January 4, 2006, this Court ordered the parties to confer and answer various questions concerning whether the suit was properly within the diversity jurisdiction of the federal courts. (D.E. 65.) *See, e.g., Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1182 (7th Cir. 1989) (discussing a district court's "obligation to review its own jurisdiction" and to raise the issue of the propriety of federal jurisdiction *sua sponte*); *accord, e.g., Hart v. Terminex Int'l*, 336 F.3d 541, 542-44 (7th Cir. 2003) (collecting Seventh Circuit authorities that dismissed suits for failure to establish diversity jurisdiction, particularly in cases involving limited liability corporations, or "LLCs," and limited liability partnerships, or "LLPs"). The Court was particularly concerned about two issues: (1) the citizenship of the various party-LLCs in the case, whose membership was unclear; and (2) the citizenship of Mr. Warner, who, in this regard, was simply described as maintaining residences in California and Illinois. (*See* D.E. 64 ¶ 5.) *See, e.g., Cosgrove v.*

6

*Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) (teaching that "the citizenship of an LLC for purposes of diversity jurisdiction is the citizenship of its members"); *Guaranty Nat'l Title Co., Inc. v. J.E.G. Assocs.*, 101 F.3d 57, 58-59 (7th Cir. 1996) (teaching that citizenship of a party-individual is the salient issue for purposes of assessing diversity jurisdiction).

The parties thereafter investigated and filed a joint brief, supported by affidavits and supplemental materials, stating that complete diversity lay at the time the suit was filed. (D.E. 66-1; D.E. 67.) The parties aver that Amakua LLC's sole member is Michael Scofield, who is a citizen of Nevada, and so Amakua is a citizen of Nevada. (D.E. 66-1 at 3; D.E. 67, Ex. A at 1.) The parties further aver that: Defendant Ty Inc. is a citizen of both Delaware and Illinois (D.E. 66-1 at 3); Defendant Mr. Warner is a citizen of Illinois, and because Mr. Warner is the sole member of Defendant Warner Hotels LLC (D.E. 67, Ex. A at 2), Warner Hotels LLC is a citizen of Illinois (D.E. 66-1 at 3-4); and Defendant JTL LLC, by virtue of the Texas citizenship of its two members, is a citizen of Texas. (D.E. 66-1 at 4; D.E. 67, Ex. A at 5-6.) Therefore, because no Defendant is a citizen of the same state as Amakua, the Court concludes that the parties are completely diverse. In addition, there is no question about the amount in controversy: Plaintiff seeks some $30 million in damages. Accordingly, the Court has subject matter jurisdiction over this matter, and the Court proceeds to the merits of the motion to dismiss.

## III.    Choice of Law

The parties in this case have framed their arguments under Illinois choice of law rules, and the Court similarly concludes that Illinois choice of law rules apply in the case *sub judice*. *See, e.g.*, *Koutsoubos v. Casanave*, 816 F. Supp. 472, 475 (N.D. Ill. 1993) ("[W]here an action was improperly filed in the transferor court, the transferee court should apply its own state's

choice of law rules rather than those of the transferor's state."); *accord, e.g., Mair v. McCormick Place*, No. 85 C 1220, 1985 WL 3297, at *3 (N.D. Ill. Oct. 24, 1985) ("The law in this Circuit since 1967 has been that, in a § 1406(a) transfer, the transferee court should apply the law of the state in which it sits.") (citation omitted). In accordance with precedent, the Court will conduct separate choice of law analyses for Counts II and III.

## IV. Standard of Review

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In ruling on a motion to dismiss, the court must assume all facts alleged in the complaint to be true and view the allegations in the light most favorable to the plaintiff. *See, e.g., Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004). Dismissal for failure to state a claim is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003) (internal quotation marks and citation omitted).

A pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). In this regard, a party must simply provide the "defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (internal quotation marks and citation omitted). Rule 9(b) of the Federal Rules of Civil Procedure creates exceptions to the federal regime of notice pleading and specifies that, for "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "Read together, Rule 9(b) and Rule 8 require that the

8

complaint include the time, place and contents of the alleged fraud, but the complainant need not plead evidence." *Nissan Motor Acceptance Corp. v. Schaumburg Nissan, Inc.*, Nos. 93 C 2701, 1993 WL 360426, at *3 (N.D. Ill. Sept. 15, 1993) (citation omitted); *accord, e.g., DiLeo v. Ernst & Young*, 901 F.3d 624, 627 (7th Cir. 1990) (stating that pleading fraud with particularity under Rule 9(b) "means the who, what, when, where, and how: the first paragraph of any newspaper story," which must be evident in the complaint); *Schreiber Distributing Co. v. Serv-Well Furniture Co. Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.") (collecting cases).

## V. Analysis

### 1. Count II Is Dismissed Without Prejudice

In Count II, Plaintiff alleges that the Warner Defendants breached the implied covenant of good faith and fair dealing. The Warner Defendants argue that, despite the fact that the Choice of Law Clause specifies California law (*see* D.E. 64, Ex. A ¶ 11), this Court should apply Illinois law to Count II. (D.E. 53 at 3 n.2.) In support of their position, the Warner Defendants argue that applying California law contravenes Illinois public policy and California does not bear a reasonable relationship to the parties or the transaction. (D.E. 59 at 5-7.) As a result, the Warner Defendants move to dismiss Count II on the grounds that Illinois courts do not recognize an independent cause of action based on the implied covenant of good faith and fair dealing. (D.E. 53 at 2-3.) In the alternative, the Warner Defendants argue that, even if California law applies, Count Two should be dismissed because Amakua has similarly failed to state a claim under California law. (D.E. 59 at 7-8.)

9

## A.    Choice of Law Analysis for Count II

As an initial matter, the Court must decide whether to apply California or Illinois law to Count II; Illinois choice of law rules govern the analysis. *Accord, e.g., Mair*, 1985 WL 3297, at *3. Under Illinois law, an express choice of law provision in a contract will be given effect provided that (1) it does not contravene a fundamental public policy of Illinois, and (2) the state chosen bears a reasonable relationship to the parties or the transaction. *See, e.g., Paul Davis Sys. of N. Ill., Inc. v. Paul W. Davis Sys., Inc.*, No. 98 C 2027, 1998 WL 749041, at *3 (N.D. Ill. Oct. 15, 1998) (citing *Potomac Leasing Co. v. Chuck's Pub Inc.*, 509 N.E.2d 751, 753-54 (Ill. App. Ct. 1987)); *accord, e.g., Newell Co. v. Petersen*, 758 N.E.2d 903, 922 (Ill. App. Ct. 2001) (referring to the same Illinois conflict of laws test). Accordingly, the Court will decide first if applying California law would contravene Illinois public policy, bearing in mind that "the public policy considerations must be strong and of a fundamental nature to justify overriding the chosen law of the parties." *Potomac Leasing Co.*, 509 N.E.2d at 754 (collecting cases); *accord, e.g., Donaldson v. Fluor Engineers, Inc.*, 523 N.E.2d 1113, 1115 (Ill. App. Ct. 1988). The Court then will assess if California bears a reasonable relationship to the parties or to the Agreement.

Before beginning the choice of law analysis, it is necessary to characterize the claim in Count II. Plaintiff frames Count II, alleging breach of the implied covenant of good faith and fair dealing, as a "contractual cause of action." (*See, e.g.*, D.E. 58 at 6 (Amakua stating that the Warner Defendants' argument that it would violate Illinois public policy to recognize a tort cause of action for breach of the implied covenant of good faith and fair dealing "fails because the implied covenant cause of action recognized in California is a *contractual* cause of action (unless insurance companies are involved)." (emphasis in original).) Therefore, the Court will consider

whether California and Illinois permit a cause of action in contract, as opposed to in tort, for

breach of the implied covenant of good faith and fair dealing.[4]

### i. Count II Does Not State a Claim Under California Law

The Warner Defendants argue that Count II fails to state a claim under California law,

because "there is no justification for asserting a separate cause of action for good faith and fair

dealing under these circumstances." (D.E. 59 at 8.) The Court agrees that California law would

not permit a separate cause of action for the claim asserted in Count II in this case.

Under California law, "[e]very contract imposes on each party a duty of good faith and

fair dealing in each performance and in its enforcement." *Careau & Co. v. Sec. Pacific Bus.*

*Credit, Inc.*, 222 Cal. App. 3d 1371, 1393 (Cal. Ct. App. 1990) (internal quotation marks and

citation omitted). The implied covenant of good faith and fair dealing:

> exists merely to prevent one contracting party from unfairly frustrating the other
> party's right to receive the *benefits of the agreement actually made*. The covenant
> thus cannot be endowed with an existence independent of its contractual

---

[4] If Plaintiff had brought Count II as a tort claim, the claim almost certainly would have
been dismissed under California law. *See, e.g., Ehmcke Sheet Metal Works v. Wausau Ins. Cos.*,
755 F. Supp. 906, 912-13 (E.D. Cal. 1991) (Levi, J.) (reviewing case law showing that "the
California Supreme Court has been notably unwilling to permit a cause of action for tortious
breach of the implied covenant of good faith and fair dealing in settings other than traditional
insurance contracts."); *Careau & Co. v. Sec. Pacific Bus. Credit, Inc.*, 222 Cal. App. 3d 1371,
1399 n.25 (Cal. Ct. App. 1990) (collecting cases and discussing that in nearly all non-insurance
cases, California courts have not permitted tort damages for breach of the implied covenant,
based on determinations that the contracting parties did not have a sufficiently "special"
relationship); *id.* at 1400 (concluding that plaintiff was not entitled to tort recovery, given that the
transaction at issue was "the quintessentially ordinary arms-length commercial transaction
between two parties of equal bargaining strength, breaches of which are adequately remedied by
ordinary contract damages.") (internal quotations marks and citation omitted). Similarly, as
discussed below, under Illinois law, "the obligation of good faith . . . creates neither a cause of
action sounding in tort nor its own *sui generis* cause of action." *Echo, Inc. v. Whitson Co., Inc.*,
121 F.3d 1099, 1106 (7th Cir. 1997) (collecting Illinois authorities).

underpinnings. It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of the agreement.

*Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1110 (Cal. 2000) (emphasis in original) (internal quotation marks and citation omitted).

For claims based in contract for breach of the implied covenant, if the allegations do not go beyond stating a breach of contract and "relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau & Co.*, 222 Cal. App. 3d at 1395. This general rule—that in breach of contract cases, independent claims for breach of the implied covenant are superfluous and should be disregarded—appears to the Court to apply to Count II, because Amakua relies on the same alleged acts relating to the Agreement and seeks the same $30 million in damages for Count II as it does in Count I for breach of contract. (*See* D.E. 64 ¶¶ 30-38.)

Caselaw reflects that there are potential exceptions to the general rule, situations where the Court should not disregard a breach of implied covenant claim: "(1) where a breach of a consensual contract claim is not alleged; (2) where the plaintiff is seeking recovery in tort; and (3) where the plaintiff alleges that the defendant acted in bad faith to frustrate the contract's benefits." *Celador Int'l Ltd. v. The Walt Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004) (collecting cases; internal citations omitted). In the present matter, only the third exception could potentially be applicable. This exception comes into play to prevent the parties from acting in bad faith to frustrate the contract's "actual benefits." *Guz*, 8 P.3d at 1112 n.18 (emphasis omitted). To explain this exception, the California Supreme Court gave an example, in the

12

context of employment law, of how the covenant might be violated: "if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned." *Id.* (finding that the exception did not apply and so the plaintiff's implied covenant claim was superfluous).

With this understanding of California law, the Court finds that Amakua has not made sufficient allegations to permit a stand-alone claim for breach of the implied covenant of good faith and fair dealing. Amakua expressly alleges that the Warner Defendants have "deliberately deprived Amakua of the benefits of the Agreement." (D.E. 64 ¶ 37.) Put differently, Amakua does not allege the existence of any "actual benefits" of the Agreement that would not be sufficiently protected by Amakua's breach of contract claim in Count One, and it has "not even attempted to plead a basis for recovery of anything other than ordinary contract damages." *Careau & Co.*, 222 Cal. App. 3d at 1392. Therefore, the Court finds that Count II is effectively duplicative of Count I and that Amakua has not sufficiently pleaded a cause of action in Count II under California law.

### ii.     Applying California Law Does Not Violate Illinois Public Policy

Returning to the choice of law analysis, the Court considers whether this application of California law would violate Illinois public policy. Illinois, via the Uniform Commercial Code, imposes an obligation of good faith in the performance of all contracts under its domain. *See, e.g.*, *Automed Tech. v. Eller*, 160 F. Supp. 2d 915, 925 (N.D. Ill. 2001) (citing *Echo, Inc. v. Whitson Co., Inc.*, 121 F.3d 1099, 1106 (7th Cir. 1997)). The duty of good faith and fair dealing "only guides the construction of contracts and does not create independent duties of the

13

contracting parties." *Echo, Inc.*, 121 F.3d at 1106 (citing *Baxter Healthcare Corp. v. O.R. Concepts Inc.*, 69 F.3d 785, 792 (7th Cir. 1995)); *accord, e.g.*, *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 1131 (Ill. 2001); *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E.2d 911, 915 (Ill. App. Ct. 2004). Put differently, "the obligation of good faith, therefore, creates neither a cause of action sounding in tort nor its own *sui generis* cause of action." *Echo, Inc.*, 121 F.3d at 1106.

Illinois has only permitted a separate cause of action in tort for breach of the covenant of good faith and fair dealing in the limited situation when an insurer breaches its duty to settle an action brought against the insured by a third party. *See, e.g.*, *Voyles*, 751 N.E.2d at 1131 (citing *Cramer v. Ins. Exchange Agency*, 675 N.E.2d 897, 904 (Ill. 1996)). It also appears that some courts applying Illinois law have permitted plaintiffs to plead a breach of the implied covenant where the "contract specifically vests one of the parties with broad discretion in performing a term of the contract," such that the covenant "requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Mid-West Energy Consultants, Inc.*, 815 N.E.2d at 916 (internal quotation marks and citation omitted).

The present matter involves a commercial contract that does not invoke the limited insurance "duty to settle" exception. Moreover, Amakua has not plead the existence of any explicit contractual discretion that might warrant a claim for breach of the implied covenant of good faith and fair dealing. *See Mid-West Energy Consultants, Inc.*, 815 N.E.2d at 916 (affirming lower court's decision to dismiss a claim for breach of the implied covenant where "no contractual discretion" existed). Thus, the Court concludes that Illinois law would not

14

recognize Amakua's second count. *See Baxter Healthcare Corp.*, 69 F.3d at 792 (dismissing plaintiff's claim for breach of the implied covenant and stating that "firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of good faith.") (internal quotation marks and citation omitted). Accordingly, the Court finds that California and Illinois law are in alignment for relevant purposes concerning Count II; with respect to the choice of law analysis, applying California law as expressly provided for in the Choice of Law Clause would not contravene any fundamental Illinois public policy. *See Cook Inc. v. Boston Scientific Corp.*, No. 01 C 9479, 2002 WL 335314, at *5 (N.D. Ill. Feb. 28, 2002) ("Because the two states treat the issue in a similar fashion, we agree with . . . [defendant] that the choice of Washington law does not flout Illinois public policy, and we are therefore obligated to enforce the contractual choice of law.").

### iii. There Are Sufficient California Contacts

Having found no violation of Illinois public policy, the Court should apply the Choice of Law Clause if it finds that there is "some relationship between the chosen forum and the parties or the transaction" at issue. *Potomac Leasing Co.*, 509 N.E.2d at 755 (collecting cases); *accord, e.g., Miyano Machinery USA, Inc. v. Zonar, L&D*, No. 92 C 2385, 1994 WL 233649, at *3 (N.D. Ill. May 23, 1994). The Warner Defendants argue that "California does not bear a substantial – or even a reasonable – relationship to the parties and the transactions contemplated by the [Agreement]." (D.E. 59 at 3.) In support of this argument, the Warner Defendants point to the facts as alleged in the Complaint, as well as the findings of the California Court. (*Id.*) The Court respectfully disagrees with the Warner Defendants' position, as discussed below.

As an initial matter, the Warner Defendants correctly assert that this Court may consider matters of public record, such as public court documents, in deciding a motion to dismiss under Rule 12(b)(6). *See, e.g., Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (stating that the Seventh Circuit had recently held that "the district court may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment.") (internal quotation marks and citation omitted). Therefore, the Court may look to the California Court's prior order in the case.

Illinois precedent teaches that the purpose of the "reasonable relationship" test for the choice of law analysis is "to preclude parties from arbitrarily selecting the laws of some jurisdiction which has no relation to the matter in controversy." *Potomac Leasing Co.*, 509 N.E.2d at 755 (citation omitted). The Court is also mindful that the Agreement was negotiated at arms-length, by sophisticated commercial parties, and the relevant precedent teaches that "[i]n an arms-length business transaction, the parties' freedom to contract is an important right that must be jealously guarded and left free from unnecessary interference by the courts." *Potomac Leasing Co.*, 509 N.E.2d at 754 (collecting cases; internal quotation marks and citation omitted).

There is a sufficient relationship between California and the parties and the negotiations relating to the Agreement to give effect to the commercial parties' express choice of law. In the Complaint, Amakua alleges the following relevant contacts with California: Defendant Warner Hotels has its principal place of business in Santa Barbara, California (D.E. 64 ¶ 4); Defendant Ty Warner maintains one of his two residences in California (*id.* ¶ 5); the Las Ventanas Property was discussed in at least one phone conversation between Amakua, Amakua's agent located in California, and the Warner Defendants' agent, Mr. Hong (*id.* ¶ 20); Mr. Hong faxed the signed

non-circumvention Agreement to Amakua's representatives in Newport Beach California (*id.*); and the Warner Defendants "have a West Coast presence with hotels." (*Id.* ¶ 22.) In addition, the California Court made several findings that support the idea that, for choice of law purposes, there is a sufficient relationship between California and the parties and transaction at issue.[5] (*See, e.g.*, D.E. 53, Ex. A at 7-8 (stating that "Mr. Warner has access to at least one residential real estate in Santa Barbara" and "resides at least part of the time in California"); *id.* at 11 (stating that JTL negotiated with Warner Hotels in Santa Barbara); *id.* at 13 n. 8 (finding that negotiations between Mr. Hong, Plaintiff, and Plaintiff's agents "involved numerous telephone conference calls between California and Illinois. The negotiations also included facsimile transmissions of the Agreement between California, Illinois and Nevada.") (internal citations omitted).) The Court finds these contacts sufficiently establish a reasonable relationship between California and the parties and the issues at hand and alleviate any concern that California law was chosen "arbitrarily" by the sophisticated commercial parties making the Agreement.

---

[5] The California Court was, of course, not applying a "reasonable relationship" test in concluding that there was a lack of personal jurisdiction over Mr. Warner and that venue was improper. For personal jurisdiction over Mr. Warner, the California Court considered whether Mr. Warner had been served in California, whether he was domiciled in California, whether he had "substantial, continuous, and systematic" contacts with California, or whether he purposefully directed his activities towards California in connection with the disputed transaction or otherwise had sufficient minimum contacts such that an assertion of personal jurisdiction would not offend traditional notions of fair play and substantial justice. (D.E. 53, Ex. A. at 7-8.) For its venue analysis, the California Court analyzed whether the Central District of California was a venue where "'a substantial part of the events or omissions' on which the claim is based occurred." (*Id.* at 12 (citing 28 U.S.C. § 1391(a).) Both of these tests require a higher threshold showing of contacts than the "some" or "reasonable" relationship required for choice of law purposes, at least where a contractual provision between sophisticated commercial parties is at play. *See, e.g.*, *Stuart v. Spademan*, 772 F.2d 1185, 1195 (5th Cir. 1985) ("Finding a reasonable relationship between the parties and the transaction and the state whose law has been chosen to govern a contract involves a far less rigorous standard than does the due-process inquiry for purposes of asserting personal jurisdiction over a nonresident.") (citations omitted).

17

### B. Count II Does Not State a Claim Under California Law

Accordingly, the Court finds that it should honor the Choice of Law Clause selecting California law. As has already been established, Amakua has not stated a claim under California law for breach of the implied covenant of good faith and fair dealing. Therefore, the Court grants the Warner Defendants' motion to dismiss Count II. It would appear that the superfluous nature of Count II would hold irrespective of what further averments Amakua might add; however, the Court will err on the side of caution and dismiss Count II without prejudice.

### 2. Count III Should Not Be Dismissed

In Count III, Plaintiff charges the Warner Defendants with common law fraud. The Warner Defendants argue that Count III should be dismissed because it raises allegations of promissory fraud, which are not actionable in Illinois where, as here, the plaintiff allegedly has not provided averments that the promise is part of a larger "scheme" to defraud. (D.E. 53 at 3-5.) The Warner Defendants also argue that Count III fails because it does not allege a harm "beyond [its] contractual expectations," which, they assert, is required under Illinois law for fraud. (*Id.* at 5-6.) Finally, and independently, the Warner Defendants argue at length that Count III fails to plead the elements of common law fraud with the specificity required by Fed. R. Civ. P. 9(b). (*Id.* at 6-10.)

### A. Count III Is Pleaded with Sufficient Particularity Under Rule 9(b)

The Court begins by addressing the Warner Defendants' argument that Plaintiff has failed to plead Count III with particularity under Rule 9(b). Rule 9(b) requires plaintiffs to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b). As was stated above, "[i]n order to survive dismissal, the plaintiff must allege the who, what, when, and where

of the alleged fraud." *Wireless Distribs., Inc. v. Sprintcom, Inc.*, No. 03 C 2405, 2003 WL 22175607, at * 4 (N.D. Ill. Sept. 19, 2003) (citation omitted). "The purpose of this heightened pleading requirement is to 'force the plaintiff to do more than the usual investigation before filing his complaint.'" *Vega v. Contract Cleaning Maint.*, No. 03 C 9130, 2004 WL 2358274, at *9 (N.D. Ill. Oct. 18, 2004) (quoting *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)).

In the present matter, Amakua has specifically alleged that on September 22, 2003, Mr. Hong committed fraud by making promises in the Agreement that "at the time the Warner Defendants entered into the Agreement . . . they had no intention of performing . . . ." (D.E. 64 ¶ 40; *see also*, *e.g.*, *id.* ¶¶ 20, 41.) In addition, Amakua alleges that after the meeting on October 1, 2003, Mr. Hong made false statements such as that "the deal was not going to occur" (*id.* ¶¶ 24, 42 (same)), that Mr. Hong did not have any faith in the deal, and that Mr. Lane was "hokey." (*Id.* ¶ 24.) At this time, according to the Complaint, attorneys for the Warner Defendants actually were bringing in lawyers and brokers to pursue and consummate the transaction. (*Id.* ¶ 42) Amakua also explains the impact of these fraudulent statements: "the promises to perform under the Agreement were made by the Warner Defendants with the intent to induce Amakua to provide the Warner Defendants with Amakua's confidential information, to utilize Amakua's introduction of the Warner Defendants to JTL to pursue the transaction, and to circumvent Amakua from participation in the Las Ventanas deal." (*Id.* ¶ 41.) For the reasons explained below, the Court finds that these allegations, within the context of the Complaint, clearly lay out the circumstances of the fraud.

19

As to the "who" element of the circumstances of the fraud, the Warner Defendants argue that in Count III, "Plaintiff improperly lumps all of the Warner Defendants together and fails to allege *which* of the Warner Defendants assertedly engaged in the conduct Plaintiff incorrectly seeks to assert as fraud." (D.E. 53 at 7 (emphasis in original) (citing, *inter alia*, *Promero, Inc. v. Mammen*, No. 02 C 1191, 2002 WL 31455970, at *10 (N.D. Ill. Nov. 1, 2002) (Guzman, J.).) The Warner Defendants are correct that the paragraphs directly under the heading "Count III" refer to the "Warner Defendants" collectively (*see, e.g.*, D.E. 64 ¶¶ 40, 41), and group pleading is often deficient for fraud averments. However, to fairly read the allegations highlighted as allegedly deficient by the Warner Defendants, one must read them within the context of the complete set of averments in the Complaint. Count III incorporates by reference paragraphs 1 through 38 of the Complaint, where it is clearly alleged that Mr. Hong signed the Agreement and uttered the various false statements identified above. (*Id.* ¶¶ 20, 24.) The Complaint also alleges that Mr. Hong was, on information and belief, the agent of Ty Inc. (*see, e.g., id.* ¶¶ 12, 14), Warner Hotels (*see, e.g., id.* at 6, n. A), and Mr. Warner (*see, e.g., id.* ¶ 22), whom Amakua collectively refers to in the Complaint as "the Warner Defendants." (*Id.* ¶ 6.) Amakua also sets forth with particularity its basis for believing that Mr. Hong was the agent of the various Warner Defendants. In this regard, Amakua explains that Mr. Hong expressly stated that he was the agent of Mr. Warner (*id.* ¶ 22); that Mr. Hong is listed on internet materials as a vice-president of Ty Inc. (*id.* ¶ 14); and that Mr. Hong has stated under penalty of perjury in an interrogatory

response (presumably tendered in connection with discovery in the California Court) that he was the agent of Warner Hotels (*id.* at 6, n. A).[6]

The Court accordingly finds that Amakua clearly identified Mr. Hong as the "who" making the allegedly fraudulent statements and gave sufficient background and basis to explain why it made its fraud allegations against the various Warner Defendants. *See, e.g., Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("Specificity requirements may be relaxed, of course, when the details are within the defendant's exclusive knowledge.") (citation omitted). The Court also notes that Plaintiff's agency allegations are not deficient because at least one of them is pleaded on information and belief. (*See* D.E. 64 ¶ 12 (information and belief allegation about Mr. Hong being a vice-president of Ty Inc.).) While "information and belief" allegations are often deficient for fraud counts—*see, e.g., Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992)—there is an exception to the prohibition against "information and belief" averments where the details are within a defendant's exclusive knowledge. *See, e.g., Jepson, Inc.*, 34 F.3d at 1328; *Refco, Inc. v. Troika Investment Ltd.*, 702 F. Supp. 684, 688-89 (N.D. Ill. 1988). In that instance, the heightened burdens imposed by Rule 9(b) may be satisfied by the plaintiff alleging with specificity the basis for the "information and belief" allegations. *See, e.g., Bankers Trust Co.*, 959 F.2d at 684; *Refco, Inc.*, 702 F. Supp. at 688-89 & n.14. In the Complaint, Plaintiff alleges its basis for believing that Mr. Hong is the agent of the various

---

[6] Amakua has also alleged that there is "a unity of interest and ownership" between Ty Inc. and Mr. Warner, and Warner Hotels and Mr. Warner, such that the corporate entities are "alter egos" of Mr. Warner. (D.E. 64 ¶¶ 7, 8.) Given that Amakua has sufficiently explained its basis for alleging that Mr. Hong was an agent of each of the Warner Defendants, the Court does not find it necessary to address these "alter ego" allegations at this time.

Warner Defendants. No more specificity can reasonably be required within the context of this case.[7]

For the reasons stated above, the Court finds that Plaintiff has sufficiently alleged the who, what, when, where, and how concerning the various fraudulent statements identified in the Complaint. The demands of Rule 9(b) are satisfied.

## B.    Choice of Law Analysis For Count III

In their other arguments in support of dismissing Count III, the Warner Defendants ask the Court to disregard the Choice of Law Clause and to apply Illinois law, while Amakua again maintains that California law should be applied. Therefore, the Court must first determine whether Illinois or California law applies to Count III.

Illinois choice of law rules dictate that the Court must examine the breadth and language of the contract's choice of law clause to determine if the parties intended it to govern all claims between them. *See, e.g., Wireless Distribs., Inc.*, 2003 WL 22175607, at * 6 (citing *Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 862 (N.D. Ill. 2002)). Precedent teaches that courts should "look to whether the language of the provision encompasses all rights and

_____

[7] For the same reasons, the Court finds that the fraud averments are not fatally defective because they allege "on information and belief" that the Warner Defendants entered into the Agreement with no intention of performing their obligations. A fair reading of the entire Complaint reveals the basis for Plaintiff's allegation. This basis includes the alleged facts that Mr. Hong, only days after he signed the Agreement, falsely told Plaintiff that the deal was not going to occur and that he had no faith in the deal, when Mr. Warner (his alleged principal) in fact believed he had a deal for the property and attorneys and brokers of the Warner Defendants were coming in to work on the transaction. (D.E. 64 ¶¶ 23-24, 42.) The basis for Plaintiff's allegation also includes the alleged fact that the Warner Defendants gave JTL an indemnification "'against any brokers especially the ones John Hong tried to get into the deal.'" (*Id.* ¶ 26 (quoting JTL communication).)

liabilities arising out of the transaction or solely the construction of the contract." *Medline Indus. Inc.*, 230 F. Supp. 2d at 862 (citation omitted).

In addition, regardless of the breadth of the choice of law provision, tort claims that are dependent upon the contract are subject to a contract's choice of law provisions. *Id.*; *accord, e.g.*, *Interclaim Holdings Ltd. v. Ness, Motley, Loadholt, Richardson & Poole*, 298 F. Supp. 2d 746, 762 (N.D. Ill. 2004). In deciding whether a tort claim is "dependent" upon a contract, courts examine whether: (1) the claim alleges a wrong based on the construction and interpretation of the contract; (2) the tort claim is closely related to the parties' contractual relationship; or (3) the tort claim could not exist without the contract. *See, e.g.*, *Wireless Distribs., Inc.*, 2003 WL 22175607, at *6 (citing *Birnberg v. Milk Street Residential Assoc., Ltd.*, Nos. 02 C 0978 & 3436, 2003 WL 151929, at *14 (N.D. Ill. Jan. 21, 2003)).

### i.     The Clause Language Does Not Show That The Parties Intended It to Cover All Disputes

Here, the Choice of Law Clause states that "[t]his Agreement will be governed and construed in accordance with the laws of the State of California." (D.E. 64, Ex. A ¶ 11.) This provision is relatively restrictive, in comparison with more broadly stated provisions typically encompassing all claims "arising out of" or "relating to" the contract. *See, e.g.*, *M. Block & Sons, Inc. v. IBM Corp.*, No. 04 C 340, 2004 WL 1557631, at *4 (N.D. Ill. July 8, 2004) ("The clause states that the laws of New York will govern any 'rights, duties and obligations arising from, or relating in any manner to, the subject matter of this Agreement.' This provision indicates that the parties intended New York law to apply broadly to matters related to or arising out of the contractual obligations."); *Medline Indus. Inc.*, 230 F. Supp. 2d at 863 (contrasting broader

"arising out of" language with the clause at issue, which provided only that the "agreement shall be subject to English law") (citing *Omron Healthcare, Inc. v. Maclaren Exp. Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994), which held that "arising out of" language in forum selection clause included all disputes whose resolution depended on construction of agreement). The Court concludes that the language of the Choice of Law Clause does not indicate that the parties intended California law to apply to tortious conduct. *See id.*; *accord, e.g.*, *Wireless Distribs., Inc.*, 2003 WL 22175607, at *6.

### ii. California Law Applies Because Count III Is Dependent on The Agreement

The Court next considers whether Count III should be viewed as dependent on the Agreement, such that the Choice of Law Clause should govern the fraud claim. *See, e.g.*, *Interclaim Holdings Ltd.*, 298 F. Supp. 2d at 762. In this case, Amakua alleges that the Warner Defendants committed fraud by making promises in the Agreement that "at the time the Warner Defendants entered into the Agreement . . . they had no intention of performing . . . ." (D.E. 64 ¶ 40; *see also id.* ¶ 41.) In addition, Amakua alleges that Mr. Hong made the false statements that "the deal was not going to occur" and that Mr. Hong did not have any faith in the deal (*id.* ¶ 24), when in fact the Warner Defendants were actively pursuing a transaction for Las Ventanas and Mr. Warner had left Las Ventanas on October 1, 2003, believing he had a deal. (*Id.* ¶ 42.)

The Court finds that these allegations of fraud show that Count III is dependent on the Agreement. As Amakua argues, "[t]he heart of Amakua's claim is the false representation *in the contract*" itself. (D.E. 58 at 9 (emphasis in original).) Moreover, any fraudulent statements attempting to conceal the breach of the Agreement were clearly closely related to the Agreement.

Therefore, Amakua's fraud count (1) is based on the construction of the Agreement, (2) is closely related to the parties' contractual relationship, and (3) could not exist without the Agreement. *See Interclaim Holdings Ltd.*, 298 F. Supp. 2d at 762; *accord, e.g.*, *Medline Indus. Inc.*, 230 F. Supp. 2d at 863 ("Because Maersk's allegedly fraudulent statements were made in the agreement, Medline's claim for fraudulent inducement is dependent upon the agreement."); *id.* ("[F]or choice of law purposes, a fraudulent inducement claim is considered to be dependent upon the contract and, therefore, subject to the choice-of-law clause, where the allegedly fraudulent statements were made in the contract.") (citation omitted). Accordingly, the Court will apply California law to Count III.[8]

_____

[8] This choice of law issue is likely of no practical consequence. The Warner Defendants' principal argument under Illinois law is that Illinois law does not allow a fraud claim predicated on promissory fraud concerning a contractual representation. However, as numerous courts have noted, Illinois law "bars [promissory] fraud claims only when the sole breach relates to a promise to do something in the future. Where the defendant misrepresented an existing or past fact, a fraud claim arises." *Midland Mgmt. Corp. v. Computer Consoles, Inc.*, No. 87 C 971, 1992 WL 281354, *3 (N.D. Ill. Oct. 8, 1992) (Posner, J., sitting by designation) (internal quotation marks and citation omitted). In addition, as Judge Posner explained, "even with respect to 'misrepresentations of intention to perform future conduct,' Illinois recognizes an exception where the misrepresentation is 'the scheme employed to accomplish the fraud.'" *Id.* (quoting *HPI Health Care Servs. v. Mt. Vernon Hospital*, 545 N.E.2d 672, 682 (Ill. 1989)). "That exception is so broad that it probably swallows the rule." *Id.* (citing *Lovejoy Elecs. v. O'Berto*, 873 F.2d 1001, 1004 (7th Cir. 1989)); *accord, e.g.*, *Stamatakis Indus., Inc. v. King*, 520 N.E.2d 770, 772-73 (Ill. App. Ct. 1987) (collecting cases); *see also Speakers of Sport, Inc. v. Proserv., Inc.*, 178 F.3d 862, 866 (7th Cir. 1999) (explaining that exception also applies where the promissory fraud "is part of a scheme to defraud, that is, . . . is one element of a pattern of fraudulent acts.") (collecting cases); *Desnick v. Am. Broadcasting Cos.*, 44 F.3d 1345, 1354 (7th Cir. 1995) ("[P]romissory fraud is actionable . . . [if] it is embedded in a larger pattern of deceptions or enticements . . . ."). In this case, even if Illinois law applied with respect to Count III, Plaintiff almost surely has sufficiently invoked the exception in Illinois law described above. In this regard, Plaintiff has alleged multiple fraudulent statements, including the alleged false non-circumvention representation in the Agreement, and Mr. Hong's alleged false statements that the deal was not going to occur and that he did not have any faith in the deal (both of which might be seen as statements of present fact and not future intention), when at that time Mr. Warner believed he had a deal and the Warner Defendants were having attorneys and brokers

### C. The Warner Defendants Have Not Shown That Count III Should Be Dismissed

Because this is the Warner Defendants' motion to dismiss, they must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lee*, 330 F.3d at 459 (internal quotation marks and citation omitted). The Warner Defendants have not cited a single case, nor even argued, that Amakua's fraud claim would fail as a matter of law under California legal principles. The Court accordingly denies the Warner Defendants' motion to dismiss Count III.

## VI. Conclusion

For the reasons stated above, the Court grants the Warner Defendants' motion to dismiss Count II without prejudice, and denies their motion to dismiss Count III.

So ordered.

_Mark Filip_
Mark Filip
United States District Judge
Northern District of Illinois

Date: 1/25/06

---

work on the transaction. Fairly read, these allegations lay out a fraud scheme involving multiple alleged misrepresentations, in which the alleged misrepresentations are the scheme to accomplish the fraud.

26