IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMAKUA DEVELOPMENT, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05 C 3082 |
| ) | |
| H. TY WARNER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Amakua Development LLC (Amakua) has sued H. Ty Warner (Warner), Ty., Inc. (Ty), and Ty Warner Hotels & Resorts LLC (Warner Hotels) for breach of contract, fraud, and quantum meruit. Amakua has also sued JTL Capital LLC (JTL) for intentional interference with contract. All claims arise out of the parties' dealings with respect to a resort hotel and surrounding property located in Mexico, referred to as Las Ventanas. This case is set for trial on October 14, 2008. The parties have filed a number of motions *in limine*. The Court rules on those motions in this decision.

### Discussion

**1. Construction of the contract**

Warner Hotels requests that the Court construe a non-circumvention provision contained in a September 2003 confidentiality and non-disclosure agreement (the Contract). The Contract forms the core of the parties' dispute. In the event that the

1

Court does not construe the Contract in the manner Warner Hotels requests, Warner Hotels moves, in the alternative, that the Court find the Contract unenforceable due to vagueness and imprecision. The provision in question provides: "10. <u>NON-CIRCUMVENTION</u>. Specifically 'Hong' agrees to refrain from circumventing 'Amakua' in any dealings either directly or indirectly." The Contract concerns the exchange of confidential information between the parties regarding their efforts to buy and sell Las Ventanas.

The parties agree that under California law, it is appropriate to look at the entire Contract to determine the meaning of the non-circumvention provision. *E.g.*, *Strong v. Theis*, 187 Cal. App. 3d 913, 918, 232 Cal. Rptr. 272, 274-75 (2005). They disagree, however, on how the non-circumvention provision should be interpreted. Warner Hotels argues that it means the defendants were prohibited from "circumventing any of Amakua's actual dealings or existing business relationships in connection with the sale of Las Ventanas." Amakua, on the other hand, argues that the provision prohibited defendants from buying Las Ventanas without Amakua's involvement. The nature of that involvement is another hotly disputed issue that is not implicated by this motion.

Reading the Contract in its entirety, the Court concludes that Amakua's interpretation is correct. Section 2 of the Contract provided that for two years, Warner Hotels was not permitted to use the confidential information received from Amakua for any reason other than in furtherance of the efforts to buy Las Ventanas. The Contract also provided that the obligation of non-disclosure applied to a wide array of affiliates of the contracting parties. In light of these other provisions, the non-circumvention clause plainly was meant to apply to any efforts by the parties regarding the purchase and sale

of Las Ventanas.  The entire purpose of the Contract, as stated in its preamble, was to set up a situation in which the parties could exchange confidential information about Las Ventanas for their mutual benefit.  If Warner Hotels were able to pursue the Las Ventanas deal without Amakua after receiving confidential information, Amakua would have had no reason to enter into the Contract in the first place.

Warner Hotels' effort to reconstruct the language of the Contract is therefore unavailing.  Its proposed interpretation would alter the meaning of section 10 when the Contract is read in its entirety.  And contrary to Warner Hotels' contention, nothing in the transmittal letter accompanying the Contract changes this interpretation. Accordingly, the Court interprets section 10 of the Contract to mean that defendants were prohibited from circumventing Amakua, either directly or indirectly, in dealings related to Las Ventanas.

The Court denies the portion of Warner Hotels' motion requesting a finding that the Contract is too uncertain to be enforced.  In their response to Amakua's motions *in limine*, the defendants assert that the question of contract certainty is an issue for the jury.  That is not an accurate statement of California law.  "Whether a contract term is sufficiently definite to be enforceable is a question of law for the court."  *Ladas v. Cal. State Auto. Ass'n*, 19 Cal. App. 4th 761, 770 n.2, 23 Cal. Rptr. 2d 810, 814 n.2 (1993). Accordingly, it is proper for the Court to make this determination.

When read as a whole, the terms of the Contract are neither indefinite nor imprecise:  Amakua agreed to turn over confidential information and Warner Hotels agreed not to circumvent Amakua with respect to Las Ventanas.  The unpublished Connecticut case cited by Warner Hotels, *Consumer Incentive Services v.*

3

*Memberworks Inc.*, No. CV 990262655, 2003 WL 23025623 (Conn. Super. Ct. Dec. 8, 2003), is distinguishable. In that case, the non-circumvention provision was part of a general agreement that addressed a number of matters but did not cover the specific transaction in which the plaintiff accused the defendant of circumvention. *Id.* at *3-4. The Contract in this case, by contrast, relates to a single, specific transaction.

**2.      Parol evidence related to the Contract**

Amakua moves generally to exclude any parol evidence that would vary the terms of the Contract, including evidence that the Contract is uncertain. Because the Contract can be construed based on its own language (as the Court has concluded), contains an integration clause, and is not uncertain, parol evidence on these points is excluded.

Defendants correctly point out, however, that parol evidence is still admissible for several purposes. Evidence that touches on "the circumstances under which [the Contract] was made," the validity of the Contract, and the potential illegality of the Contract will not be excluded. *See* Cal. Civ. Proc. Code § 1856. The Court has not yet determined, however, which of those issues are proper for the jury to decide.

**3.      Evidence of brokerage activity generally**

Amakua requests that the Court exclude evidence of brokerage activity on grounds of relevancy and potential confusion. The Court denies that request. One of the defendants' primary defenses is that the Contract is illegal, and thus unenforceable, because Amakua was acting as an unlicensed broker when it brought the parties together for the purchase of real estate. *See* Cal. Bus. & Prof. Code § 10131; Cal. Civ.

Proc. Code § 1856(g). As former Judge Filip found when ruling on the parties' motions for summary judgment, this is a hotly contested issue with many disputed facts. Accordingly, evidence of brokerage activity by Amakua is relevant. As noted above, however, it remains to be determined whether those issues are properly decided by the jury.

4. **Evidence of brokerage activity by Rice**

Warner Hotels seeks to exclude evidence of brokerage activity by Greg Rice. The motion is granted with respect to evidence regarding whether Rice was a licensed broker. Whether Rice was licensed has no bearing on whether Amakua had to be licensed; the evidence is thus not relevant for that purpose. Warner Hotels' motion is denied, however, with respect to evidence of the actual activities performed by Rice with respect to Las Ventanas. If Rice was acting as a broker, it may tend to make it less likely that Amakua did so. Again, however, the Court reserves for later determination whether the brokerage issue is for the jury or the Court to decide.

5. **Amakua's lost profits**

Warner Hotels seeks to prevent Amakua from presenting any evidence on lost profits damages for three reasons. First, Warner Hotels contends that lost profits damages are unavailable on a fraud claim when the defrauded party alleges the fraud kept it from acquiring property that would have generated future profits. *See* Cal. Civ. Code 3343; *Kenly v. Ukegawa*, 16 Cal. App. 4th 49, 52-55, 19 Cal. Rptr. 2d 771, 773-75 (1993). However, only one of Amakua's claims is based on fraud. Section 3343 and *Kenly* have no bearing on Amakua's ability to seek lost profits on its claims for

5

breach of contract, intentional interference with contract, and quantum meruit.

Second, Warner Hotels argues that Amakua's lack of a track record prevents it from recovering lost profits. The authority upon which Warner Hotels relies, however, acknowledges that even an "unestablished business" can recover "anticipated profits dependent on future events . . . where their nature and occurrence can be shown by evidence of reasonable reliability." *Kids' Universe v. In2Labs*, 95 Cal. App. 4th 870, 883, 116 Cal. Rptr. 2d 158, 167-68 (2002) (quotation omitted). Methods for proving the lost profits of an unestablished business include expert testimony, market financial data, and business records of companies engaging in similar ventures (including, potentially, the defendants in this matter). *Id.* at 884-85, 116 Cal. Rptr. 2d at 168-69. It is especially appropriate to do so when it is the defendants' alleged "wrongful acts that have created the difficulty in proving the amount of loss profits." *GKH Assocs. v. Mayer Group, Inc.*, 224 Cal. App. 3d 856, 873-74, 274 Cal. Rptr. 168, 179 (1990). In this case, Amakua intends to present expert testimony and other evidence regarding lost profits. Warner Hotels' attack on Amakua's lack of a track record does not call for excluding all evidence of lost profits; rather, it goes to the weight of Amakua's lost profits evidence.

Finally, Warner Hotels contends that Amakua is seeking gross profits instead of net profits. Net profits are the proper measure for lost profit damages under California law. *See, e.g.*, *Kids' Universe*, 95 Cal. App. 4th at 884, 116 Cal. Rptr. 2d at 168-69. Thus, to recover at trial, Amakua will have to establish its net lost profits. The fact that one component of Amakua's damages evidence (*e.g.*, Maurice Robinson's testimony) might not contain all the calculations or information allowing determination of Amakua's

6

net lost profits is not a basis to exclude that evidence. Amakua may arrive at its net lost profits calculation through a combination of witnesses and documents. If Amakua fails to carry its burden to prove net, as opposed to gross, profits, it will have to live with the potential consequences of such a failure. *See, e.g.*, Fed. R. Civ. P. 50(a).[1]

For these reasons, the motion to exclude evidence of Amakua's lost profits is denied.

**6.     Ty Warner's connections to California**

Warner moves to exclude evidence of his connections to California because he anticipates Amakua would use such evidence to re-litigate the issue of personal jurisdiction. Amakua, on the other hand, states that it plans to use the questioned evidence to establish that Warner is the alter ego of several corporate entities. The Court denies Warner's motion because Amakua has articulated a proper use for this evidence.

**7.     Conversation between Pate and Kanzler and conduct from the *Softbelly's* litigation**

Ty and Warner move to exclude two related categories of evidence. The first is evidence that a former employee of Ty and Warner, Michael Kanzler, attempted to influence the testimony of a witness, Merrill Lynch employee Gabe Pate. The second is evidence that Warner himself engaged in similar conduct in prior, unrelated

---

[1]The Court advises Amakua to take this admonition seriously, especially in light of its ambiguous statement in its response to Warner Hotels' motion that "Amakua's experts have made sufficiently conservative estimates to more than compensate for any such deductions," possibly referring to expenses that lead to net profits. No authority has been cited for the proposition that using conservative estimates in one part of a damages calculation excuses a plaintiff from making the adjustments necessary to reach a measure of net lost profits.

proceedings, referred to in the motion as the *Softbelly's* litigation.

The Seventh Circuit has stated that, as a general rule, "'an attempt by a litigant to persuade a witness not to testify is properly admissible against him as an indication of his own belief that his claim is weak or unfounded or false.'" *Ty Inc. v. Softbelly's, Inc.*, 353 F.3d 528, 534 (7th Cir. 2003) (quoting *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.3d 594, 599 (3d Cir. 1968)). This general rule does not, however, lead to admission of the evidence cited by Amakua.

The Court will grant Ty's motion and preclude Amakua from introducing evidence or presenting argument that imply Kanzler attempted to alter or obstruct Pate's testimony. The record clearly indicates that Kanzler was not attempting to do so. Kanzler was upset with Pate and Merrill Lynch because they had responded to Amakua's subpoena by producing Warner's confidential, personal financial information without giving any notice to Warner that they were doing so. It is telling that Pate readily admits that he did not think Kanzler was attempting to alter his testimony or prevent him from testifying. Any argument or insinuation by Amakua that Kanzler attempted to influence Pate's testimony would be grossly and unfairly prejudicial in light of the clear record that no such attempt was made. Fed. R. Evid. 401 & 403.

In light of the Court's ruling regarding the Pate-Kanzler conversation, Amakua's attempt to inject Warner's conduct in the *Softbelly's* litigation is even more tenuous and unfairly prejudicial. Amakua states it wants to show that Warner has engaged in "a pattern and practice and intent to improperly influence witnesses that illuminates the true nature of the Kanzler's conversation with Pate." Plaintiff's Opposition to H. Ty

8

Warner's Motion *In Limine* at 6. As detailed above, however, there was no effort to improperly influence Pate. For this reason, there is no pattern. In any event, the slight probative value (if any) of evidence of wrongdoing by Warner in the *Softbelly's* litigation – which has no connection to the present litigation – is far outweighed by the unfair prejudice this evidence would produce.[2] Accordingly, the Court grants Warner's motion.

## 8. Illegal restraint of trade

Amakua moves to exclude evidence and argument that the non-circumvention provision of the Contract is an illegal restraint of trade. For the reasons previously stated on the record in open court, the Court grants that motion.

## 9. USA Capital and Milanowski

Amakua requests that the Court exclude evidence pertaining to a company called USA Capital and its principal Joseph Milanowski. Amakua is apparently concerned that its association with these third-parties could taint it because Milanowski is currently the subject of an SEC investigation. Defendants correctly counter that this evidence is relevant because it concerns Amakua's access to capital and, thus, its ability to participate in the Las Ventanas venture. Indeed, Amakua itself invited defendants to subpoena or contact USA Capital and Milanoski in its response to discovery requests. Accordingly, the Court denies Amakua's request to exclude this evidence, subject to the following caveats.

---

[2]Tellingly, on remand from the Seventh Circuit, the trial judge in the *Softbelly's* litigation excluded the evidence of Warner's previous attempt to influence a witness, finding it was unfairly prejudicial and that the witness was available to testify in the new trial. *Ty Inc. v. Softbelly's, Inc.*, No. 00 C 5230, 2006 WL 5111124 at *9 (N.D. Ill. Apr. 7, 2006). In this case, there has been no contention that Pate is unavailable to testify at trial.

First, the Court excludes, as irrelevant, evidence concerning Milanowski and his dealings or problems with the SEC. Second, defendants' exhibit 541 is excluded as irrelevant, as that exhibit is nothing more than a discovery dispute letter between the parties. Third, with respect to defendants' exhibit 1020, defendants are precluded from asking questions regarding the redaction of this document. The third caveat is subject to reconsideration if there is any evidence that the redaction was made by someone other than Amakua's counsel.

**10. Evidence of other projects involving Amakua**

Amakua next seeks to exclude as irrelevant evidence of its work on other potential projects and deals. Defendants point out several proper uses for such evidence, including Amakua's motive and intent in possibly performing brokerage activities and Amakua's experience and access to capital. These are all issues that could affect Amakua's role and ability to participate in the Las Ventanas transaction. Accordingly, the Court denies Amakua's motion. The Court cautions both parties, however, against conducting a mini-trial on Amakua's past experiences; the Court is prepared to exclude, on an appropriate objection, overly-extensive or redundant evidence on this topic.

**11. Defendants' experts**

Amakua seeks to exclude testimony by defendants' experts as well as their reports. Former Judge Filip previously excluded portions of these experts' proposed testimony. The Court adopts that ruling. Additionally, the Court will exclude any purported expert evidence concerning the certainty of the Contract. The Court also

bars the proponents of any expert from introducing the expert's report in evidence, as it amounts to inadmissible hearsay. The Court denies remainder of Amakua's motion to exclude defendants' experts.

12.  **Amakua's "unverified" resume**

Amakua also moves to exclude a document produced in discovery that it claims was an incomplete and unverified list of its past experience. For the reasons previously stated on the record in open court, the Court denies that motion.

13.  **Hong's estimation of Amakua's claims**

Finally, Ty moves to exclude evidence of a conversation between John Hong and Pate regarding this litigation. For the reasons previously stated on the record in open court, the Court grants that motion.

## Conclusion

The Court having ruled on the parties' motions *in limine*, the clerk is directed to terminate those motions [docket nos. 184, 186, 187, 188, 189, 194].

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  September 26, 2008